THE PEOPLE, *ex relatione* Robinson, *vs.* THE SUPERIOR COURT OF THE CITY OF NEW YORK.

Where a subordinate court sets aside a report of referees and orders a rehearing because dissatisfied with the finding of the referees upon the facts, or because in the opinion of the court the justice of the case requires a fuller hearing, this court will not grant a mandamus to vacate the order for rehearing.

It seems, however, that if the report was set aside because it was conceived that upon the facts found by the referees, the law was against the plaintiff, in whose favor the report was made, and if after the intimation of such opinion, the court refused upon the application of the plaintiff to render judgment against him, so that he might bring error, this court would award a mandamus requiring the prayer of the plaintiff to be granted.

Oct. 1837.

THIS was a motion for a *mandamus*, to the superior court of the city of New-York, commanding them to vacate a rule setting aside a report of referees ; or to render judgment, so that the relator may bring a writ of error.

An action of assumpsit was brought by the relator, a broker in the city of New York, on the balance of an account for disbursements and brokerage in the course of various purchases and sales of stocks for the defendant, from November 18th, 1833, to February 10th, 1834. The cause was referred. The defence set up was, that the purchases by the broker were of various persons, who at the time did not hold the stock ; and therefore the transactions were a violation of the act to prevent stock jobbing. 1 R. S. 776. The referees found, and so reported specially, that the stocks were all purchased by the plaintiff for the defendant, at his request ; that they were deliverable to the plaintiff on certain days after the purchases ; that the plaintiff was ignorant whether the sellers did or did not hold the stocks at the days of sale ; that the purchases were ratified and accepted by the defendant, who assented to the receiving of the stocks, and the payments for them by the plaintiff for the defendant, when the periods for receiving the stocks arrived, agreeably to the contracts of sale ; and that the defendant promised to pay the final account of $1072,55, for which sum, with interest, the referees reported for the plaintiff. On affidavits made in behalf of the defendant, stating the testimony, and answered by affidavits on the side of the plaintiff, the court set aside the report. The relator then moved the court for judgment on the report *against himself*, in order that he might bring a writ of error, which was also denied.

*By the Court,* Cowen, J. By refusing to allow an entry of the report upon the record, and then to give judgment against the relator, as he desired, which would have been the proper course in order to a writ of error, I infer that the court below were dissatisfied with the report in point of fact. 1 R. S. 306, § 48, 2d ed. 12 Wendell, 291. Rule 75 of Sup. Court. 11 Wendell, 483. They thought, perhaps, that the referees ought to have found that the plaintiff's purchases were of stock not held at the time by those who sold to him ; and that he knew, or had reason to believe that this was the fact : in short that the whole was a contrivance between him and the defendant to evade the

ALBANY, Oct. 1837.

The People v. Superior Court of New York.

ALBANY,
Oct. 1837.

The People
v.
SuperiorCor·t
of New York.

provisions of the act against stock jobbing. For this purpose it became their duty to look into the facts in proof before the referees as presented by the affidavits of both parties. These affidavits are somewhat in conflict as to material facts. The affidavits which stated the case on the side of the defendant, certainly raised a suspicion against the plaintiff, that he might have knowingly embarked in the transactions mentioned in the accounts, as the stock jobbing agent of the defendant; and the court might also have thought that these affidavits, not those of the plaintiff, gave a true account of the matter. It may be they were not satisfied with the finding of the referees in respect to some other material fact in the case, which they desired should be stated differently before they would allow the report to go upon the record, with a view to raise the questions of law, which the plaintiff now seeks to raise. I am not prepared to say that they might not in their discretion send the cause again to referees, or direct a trial by jury, with the view to a more full developement of the facts; and for the purposes of a new hearing in any form they must first set aside the report.

I have gone through with the affidavits, and incline to think that I should, upon the evidence as presented by them have come to the same conclusion with the referees as to the facts. Sitting on an original review of this report, therefore, I should have felt myself warranted in taking up the questions of law presented by the report. The case stands here, however, on a different footing. On motion for a mandamus, if there appears to be a fair, indeed I may say a plausible opening for an opposite conclusion, there is no rule of law upon which I can say to the court below that they shall not adopt it. They have in general, a discretion to grant or withhold a new trial or a re-hearing before referees; and as a general rule, therefore, we cannot control them by mandamus. That they have acted against a strong balance of testimony is not enough. The case should be conclusive against them in point of fact; and come to us upon a mere point of law.

In this case it is agreed that the purchases by the plaintiff were all made on time, and the plaintiff's clerk and nephew swore that it was not usual in such cases for the seller to own the stock ; and according to the defendant's account of the case, when the plaintiff's books of original entry were called for with a view to see whether the plaintiff owned any of the stock, they were withheld, though the clerk admitted that by a reference to them it might appear whether the plaintiff did or did not own the stocks himself. It is certainly not extraordinary for the court below to suppose that the sagacity of a stock broker purchasing on time, ought to be held to a presumption and even a knowledge that the stock was not owned by the purchaser, especially when he keeps back those books which it is understood might go still farther to show the fact one way or the other. There are some other circumstances which combined with these, forbid us to treat the case as clear and conclusive of the plaintiff's innocence. If he had knowledge, then whether he was to be deemed a mere agent and lender of money to the defendant, and as such beyond the operation of the stock jobbing act, vide *Seers* v. *Ashley*, 6 T. R. 61, *Brown* v. *Turner*, 7 id. 626, is a question which need not be examined, because the superior court may have thought it should be taken, when it is examined with the *knowledge* of the plaintiff, not his *ignorance*, as found by the referees.

In the case before us the referees have not even found the fact directly, that the sellers did not own the stocks at the time of the sale to the plaintiff. The court, perhaps, thought they ought to have found this ; or that, at least, there should be a re-hearing upon that point. By what rule of law am I to estimate the force or weight of circumstances falling on the mind ; The law knows no standard in such cases beyond the mind which it has selected to weigh them. *Ex parte Morgan*, 2 Chitty's R. 250. *Rex* v. *The Justices of Worcestershire*, 1 Chitty's R. 649. It orders the court to set aside a report when it is against the weight of evidence, and confides the issue whether it be so to the discretion of the judges. It is not, if I may be allowed to say so, a case of specific gravity, as if it presented evidence which the law

ALBANY,
Oct. 1837.

The People
v.
Superior Court
of New-York.
would hold conclusive, or pronounce to be *prima facie* suf·
ficient; but a case in which men must proceed without scales
to affix a weight by the exercise of their reason. A manda-
mus cannot direct the line of thought. Where the law leaves
that open it is never done. Jurors weighing circumstances
by which to measure vindictive damages, or even on trying
issues of life, are familiar instances. You cannot in mechan-
ics make two clocks go alike. With what propriety then
shall the law go into the region of metaphysics and demand
that men shall agree in certain prescribed conclusions from
premises demanding the exercise of human judgment? It
allows an appeal and re-hearing by other men in certain
cases; but a mandamus deals in matter of law; as exclu-
sively as a writ of error or certiorari. Suppose the court .
below had granted or refused a new trial, on a *case* contain-
ing the facts disclosed by these affidavits; it is abundantly
settled that in such case a mandamus shall not go because we
may think the court has mistaken the weight of evidence.
*Ex parte Bailey*, 2 Cowen, 479, 483. *Ex parte Morgan*, 2
Chitty's R. 250. The same rule applies where they have
set aside the report of referees.

It is said the superior court acted on a mere question of
law, as presented by the special report. As I intimated be-
fore that does not appear. Had they done so, recognizing
the correctness of the report as to facts, it is certainly very
surprising they should have refused to enter the report on
the record and give judgment upon it, so that the party
might bring his writ of error. I must intend that they did
not err in a matter of such plain duty; but that they disa-
greed with the referees as to conclusions of fact. In that
view it is a work of entire supererogation for me to exam-
ine the question argued, which is, whether an innocent agent
is within the stock jobbing act; or whether the statute be
not confined to the parties in interest, and not to the agent,
or one advancing money to others for the purposes of stock
jobbing.

                                        Motion denied.